Rodney S. **PERRY**, Appellant–
Petitioner,

v.

**STATE** of Indiana, Appellee–
Respondent.

No. 45A04–0805–PC–296.

Court of Appeals of Indiana.

April 14, 2009.

Transfer Denied July 23, 2009.

Rodney S. Perry, Michigan City, IN, Appellant pro se.

Gregory F. Zoeller, Attorney General of Indiana, Zachary J. Stock, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-petitioner Rodney S. Perry appeals the denial of his post-conviction relief. He argues that the post-conviction court committed judicial misconduct and erroneously concluded that he did not receive the ineffective assistance of trial and appellate counsel. Finding no error, we affirm.

## FACTS

The underlying facts were summarized in Perry's direct appeal as follows:

> On January 6, 1997, Perry broke into the house of his estranged wife, Marsheila Perry, after his mother-in-law, Florida Clark, refused to let him in. Marsheila struck Perry with a baseball bat, but Perry then took the bat away. When Clark attempted to make a phone call, Perry struck her in the head with the bat at least four times. He then struck Marsheila in the head with the bat at least five times. Both Clark and Marsheila died. Perry's three children were present when he killed Clark and Marsheila.

> The State charged Perry with two counts of murder. On June 26, 1997, Perry agreed to plead guilty to two counts of Class A felony voluntary manslaughter. The agreement left sentencing entirely to the trial court's discretion....

> On July 24, 1997, the trial court sentenced Perry to thirty-five years for each voluntary manslaughter conviction, to be served consecutively for a total sentence of seventy years....

*Perry v. State,* 845 N.E.2d 1093, 1094–95 (Ind.Ct.App.2006). In his direct appeal, Perry argued that the trial court abused its discretion in imposing the aggregate seventy-year sentence and that the sentence was inappropriate in light of the nature of the offenses and his character. This court disagreed and affirmed. Our Supreme Court later denied transfer. 855 N.E.2d 1013 (Ind.2006).

On October 20, 2006, Perry filed a petition for post-conviction relief. Following a hearing, the post-conviction court denied the petition on April 30, 2008, finding and concluding, in relevant part, as follows:

8. The petitioner claims that trial counsel was ineffective when he failed to adequately argue mitigators during his sentencing hearing, specifically those of mental illness, drug use and the fact that the petitioner had chosen to plead guilty. All of the issues regarding the sentences, even though couched in terms of ineffective assistance of counsel, are res judicata, because the sentences were appealed [and] found to be appropriate. A review of the sentencing hearing transcript reveals that counsel did, in fact, mention all of these mitigators to the court. Trial counsel began his argument by stating that the petitioner had pled guilty to the crimes, and it certainly cannot be said that the court was not well aware that the petitioner had pled guilty after having entertained his guilty plea. Counsel also mentioned petitioner's suicide attempts, manic depression, and drug use during argument. It cannot be said, in the absence of other evidence, that when counsel argued mitigators to the court and the court ultimately chose not to adopt to

[sic] those mitigators, that somehow counsel was ineffective. Furthermore, counsel requested concurrent sentences, and again, the court's decision to impose consecutive sentences does not establish that counsel was ineffective.

10. [sic] The petitioner also claims that trial counsel was ineffective in failing to object to the court's aggravation of the petitioner's sentence because children were present during the killings. The petitioner volunteered testimony at both his guilty plea hearing and his sentencing hearing admitting that his three children were present in the home at the time of the killing, and that at least one of the children was awake at the time. The omission did not preclude the petitioner from appealing the propriety of his sentence to the Court of Appeals.

* * *

12. Nor did appellate counsel's performance fall below prevailing professional norms. Petitioner's claim that the absence of the pre-sentence investigation report from the appendix prevented the appellate court from considering the mitigators of mental illness and drug use is incorrect. The [C]ourt of Appeals did, in fact, have information concerning these mitigators as it had the transcript from the sentencing hearing where such matters were presented to the court by defense counsel, and by the petitioner himself. . . .

* * *

15. The petitioner's claim that trial counsel and appellate counsel are ineffective for failing to object to consecutive sentences, and raise on appeal the issue that concurrent sentences were required because these crimes constituted a single episode of criminal conduct is simply not supported by the law. I.C. 35–50–1–2 specifically defines . . . voluntary manslaughter as [a] crime[ ] of violence, which [is] exempt from the limitation on consecutive sentences for crimes constituting a "single episode of criminal activity."

15. [sic] Lastly, the petitioner presented no evidence from which the court can conclude that the petitioner's guilty plea was not knowing, intelligent, and voluntary.

Appellant's App. p. 18–19 (internal citations omitted). Perry now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

■ The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5); *McCarty v. State*, 802 N.E.2d 959, 962 (Ind.Ct.App.2004). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.* On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.*

■ Post-conviction procedures do not afford petitioners with a "super appeal." *Richardson v. State*, 800 N.E.2d 639, 643 (Ind.Ct.App.2003). Rather, they create a narrow remedy for subsequent collateral challenges to convictions that must be based upon grounds enumerated in the post-conviction rules. *Id; see also* P–C.R. 1(1).

### II. Judicial Misconduct and Bias

■ Perry first makes a series of barely cogent arguments regarding alleged bias and misconduct on the part of the post-conviction court, magistrate, and an attorney involved with the case. *See Diaz v. State*, 753 N.E.2d 724, 728 (Ind.Ct.App. 2001) (holding that the failure to present a cogent argument adequately supported by authority will result in a waiver of the appellant's claims). Our review of Perry's brief has left us with the general impression that he relies upon a number of the post-conviction court's rulings that were adverse to Perry as support for his allegation of judicial misconduct.

■ When the impartiality of the trial judge is challenged on appeal, we will presume that the judge is unbiased and unprejudiced. *Smith v. State*, 770 N.E.2d 818, 823 (Ind.2002). To rebut that presumption, the defendant "must establish from the judge's conduct actual bias or prejudice that places the defendant in jeopardy." *Id.* "To assess whether the

judge has crossed the barrier into impartiality, we examine both the judge's actions and demeanor." *Timberlake v. State*, 690 N.E.2d 243, 256 (Ind.1997).

The post-conviction court permitted the State to stand upon previous answers and the record from Perry's trial rather than creating and filing new discovery and pleadings in the post-conviction proceeding. The court also ruled against Perry on a number of different instances, including its ultimate disposition of his petition. But adverse rulings alone are insufficient to establish bias per se. *Moore v. Liggins*, 685 N.E.2d 57, 63 (Ind.Ct.App. 1997). Furthermore, bias will rarely, if ever, be found on the face of rulings alone because the defendant must show an improper or extra-judicial factor or such a high degree of favoritism that a fair judgment was impossible. *Crawford v. State*, 634 N.E.2d 86, 87 (Ind.Ct.App.1994). Here, Perry has offered no evidence that the post-conviction court derived its decisions from an improper source or was motivated by the type of hostility necessary to establish judicial bias.[1] Thus, Perry's claim must fail.

### III. Ineffective Assistance

When evaluating a claim of ineffective assistance of counsel, we apply the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Pinkins v. State*, 799 N.E.2d 1079, 1093 (Ind.Ct.App. 2003). First, the defendant must show that counsel's performance was deficient. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

This requires a showing that counsel's representation fell below an objective standard of reasonableness and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed to the defendant by the Sixth and Fourteenth Amendments. *Id.* at 687–88, 104 S.Ct. 2052. Second, the defendant must show that the deficient performance resulted in prejudice. *Id.* To establish prejudice, a defendant must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. 2052. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

We will not lightly speculate as to what may or may not have been an advantageous trial strategy, as counsel should be given deference in choosing a trial strategy that, at the time and under the circumstances, seems best. *Whitener v. State*, 696 N.E.2d 40, 42 (Ind.1998). If a claim of ineffective assistance can be disposed of by analyzing the prejudice prong alone, we will do so. *Wentz v. State*, 766 N.E.2d 351, 360 (Ind.2002).

Claims of ineffective assistance of appellate counsel are reviewed using the same standard applicable to claims of trial counsel ineffectiveness. *Bieghler v. State*, 690 N.E.2d 188, 193 (Ind.1997). These claims generally fall into three categories: (1) denying access to the appeal, (2) waiver of issues, and (3) failure to present issues well. *Id.* at 193–95. The decision of what issue or issues to raise on appeal is one of

---

1. To the extent that Perry complains that Magistrate Bokota represented the State in the early portion of his post-conviction proceedings and later issued rulings as a magistrate in the same proceeding, we simply note that he has not argued that any of her rulings were substantively incorrect or improper. Similarly, Perry points out that Judge Pro Tempore Graddick, who issued certain rulings adverse to Perry in the post-conviction proceedings, had represented Perry in a guardianship case in the past. Again, Perry has not shown why any of Judge Graddick's rulings were substantively improper. Thus, these claims must fail.

the most important strategic decisions made by appellate counsel. *Id.* at 193. Thus, ineffectiveness is rarely found when the issue is the failure to raise a claim on direct appeal. *Id.*

### A. Trial Counsel

Perry argues that his trial counsel was ineffective for failing to request a mental competency evaluation, ask that Perry's alleged mental illness be considered a mitigating factor, investigate and prepare certain defenses, and for allowing Perry to plead guilty to voluntary manslaughter when Perry admitted only that he acted with sudden heat and not with the intent to kill.[2]

■ Turning first to Perry's alleged mental illness, we observe that the only evidence in the record of his mental illness is contained within the presentence investigation report (PSI). The PSI explains that Perry told the probation officer preparing the report that he had been diagnosed in the past with manic depression. Even if we accept for argument's sake that Perry, in fact, suffers from manic depression, he offered no evidence at the post-conviction hearing regarding what the outcome would have been had his trial counsel requested a mental competency evaluation. He offers no argument that such an evaluation would have changed his decision—or ability—to plead guilty, nor does he suggest that an evaluation would have altered the trial court's sentencing decision. Under these circumstances, therefore, Perry

has failed to establish that he was prejudiced as a result of his trial attorney's failure to request a mental competency evaluation.

■ Along the same lines, Perry argues that his trial counsel was ineffective for allegedly failing to proffer Perry's mental health as a mitigator during sentencing. As the post-conviction court observed, however, Perry's attorney *did* raise the issue:

> [Trial c]ounsel also mentioned petitioner's suicide attempts, manic depression, and drug use during [sentencing] argument. It cannot be said, in the absence of other evidence, that when counsel argued mitigators to the court and the court ultimately chose not to adopt to [sic] those mitigators, that somehow counsel was ineffective.

Appellant's App. p. 18. We certainly cannot and will not find Perry's trial counsel ineffective for failing to do something that he did, in fact, do.

Additionally, we note that, had Perry gone to trial and been convicted of the originally-charged two counts of murder, he faced a maximum of 130 years of imprisonment. I.C. § 35–50–1–2, § 35–50–2–3(a). Instead, Perry's trial counsel negotiated a plea agreement whereby Perry pleaded guilty to two class A felonies and received a seventy-year sentence. Furthermore, Perry's trial counsel argued for concurrent sentences. Although he did not succeed, there is little doubt that, had

---

2. To the extent that Perry raises arguments directly related to the trial court's imposition of his sentence—e.g., an improper aggravator and inappropriate consecutive sentences—we simply note that he has waived some of these arguments by failing to raise them in his direct appeal. *See Lindsey v. State*, 888 N.E.2d 319, 322 (Ind.Ct.App.2008) (holding that "[i]f an issue was known and available, but not raised on direct appeal, it is waived on post-conviction]"), *trans. denied.* With respect to others—such as the propriety of consecutive sentences—the issue is res judicata, inasmuch as this court already considered the issue and decided in the State's favor. *See id.* (holding that if an issue was "raised on appeal, but decided adversely, it is res judicata"). Thus, we will not consider the substance of these arguments.

the matter gone to trial, Perry would have received consecutive sentences. *Serino v. State*, 798 N.E.2d 852, 857 (Ind.2003) (holding that enhanced and consecutive sentences "seem necessary to vindicate the fact that there were separate harms and separate acts against more than one person"). Under these circumstances, we cannot conclude that if Perry had gone to trial, there is a reasonable probability that a more favorable result would have obtained. *See Segura v. State*, 749 N.E.2d 496, 507 (Ind.2001) (holding that to establish ineffective assistance in a guilty plea setting, "in the case of claims related to a ... failure to mitigate a penalty, it must be shown that there is a reasonable probability that a more favorable result would have obtained in a competently run trial"). Thus, Perry did not receive ineffective assistance of trial counsel on this basis.

■ Perry next argues that his trial counsel was ineffective for failing to investigate and prepare the defenses of self-defense and intoxication. He fails to elaborate, however, and neither cites to the record nor to authority in support of his argument that these defenses would have been viable and helpful. Therefore, we decline to find his attorney ineffective for this reason.

■ Perry also argues that his trial counsel was ineffective for permitting him to plead guilty to voluntary manslaughter when he admitted only to acting with sudden heat rather than with the intent to kill the victims. Although the precise nature of Perry's argument is difficult to discern, we begin by observing that the very definition of voluntary manslaughter is a person who knowingly or intentionally kills another human being while acting under sudden heat. I.C. § 35–42–1–3(a). Perry does not argue that he was innocent or that there was an excuse that prevented him from acting knowingly or intentionally— e.g., insanity or involuntary intoxication—

that would have prevented him from forming the requisite mens rea. Under these circumstances, we find that Perry's trial counsel was not ineffective for this reason. *See Segura*, 749 N.E.2d at 507 (holding that when reviewing a claim that trial counsel was ineffective in a guilty plea setting, "a petitioner may be entitled to relief if there is an objectively credible factual and legal basis from which it may be concluded that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial").

### B. Appellate Counsel

Finally, Perry contends that his appellate counsel was ineffective for omitting certain arguments and for failing to present other arguments well enough in his direct appeal. Specifically, Perry argues that his appellate counsel should have argued that the aggravator relating to the three children being present at the time of the crimes was improper, that the trial court failed to assign sufficient mitigating weight to Perry's decision to plead guilty, and that consecutive sentences were improper because the trial court ordered them based on its conclusion that Perry had made a deliberate decision to kill a second time.

■ Initially, we observe that "[c]laims of inadequate presentation of certain issues, when such were not deemed waived in the direct appeal, are the most difficult for convicts to advance and reviewing tribunals to support." *Bieghler v. State*, 690 N.E.2d 188, 195 (Ind.1997). This is so for a number of reasons, including the fact that this court performs its own research. Thus, when appellate counsel raised, researched, and discussed an issue "decided by an appellate court, deference should be afforded both to the attorney's professional ability and the appellate judges' ability to recognize a meritorious argument." *Id.*

at 196 (internal quotation omitted). Relief under these types of claims is appropriate only when we are "confident [we] would have ruled differently." *Id.*

▇▇ Perry first contends that his appellate counsel should have argued that the trial court abused its discretion by considering the fact that Perry's three children were present at the time of the crimes to be an aggravator. Essentially, Perry argues that the trial court reached an erroneous conclusion of fact and directs our attention to certain evidence in the record—namely, his own statements—in support of that argument. Had his appellate counsel made such an argument, however, we would undoubtedly have found that he was asking us to reweigh the evidence and assess witness credibility, which we would have declined to do. Furthermore, at the most, Perry argues that the children were elsewhere in the house, asleep, while the crimes were permitted. He impliedly admits, therefore, that they were present in the house—and within earshot—when he killed the victims.

Perry also directs our attention to authority establishing that

> under normal circumstances the impact upon family is not an aggravating circumstance for purposes of sentencing. The impact upon others may qualify as an aggravator in certain cases but "the defendant's actions must have had an impact on ... 'other persons' of a destructive nature that is not normally associated with the commission of the offense in question and this impact must be foreseeable to the defendant."

*Bacher v. State,* 686 N.E.2d 791, 801 (Ind. 1997) (quoting *State v. Johnson,* 124 Wash.2d 57, 873 P.2d 514, 525 (1994)) (internal citations omitted). Perry argues that because the children were family and not "other persons," *Bacher* establishes that their presence at the time of the crimes is an improper aggravator.

We disagree, inasmuch as the *Bacher* rule is directed at the loss experienced by the loved ones of a murder victim: "because such impact on family members accompanies almost every murder, we believe it is encompassed within the range of impact which the presumptive sentence is designed to punish." *Id.* Here, the presence of children at the time of the crime is easily distinguished from the situation contemplated by *Bacher.* And indeed, it is well established that a trial court may consider as an aggravating factor that the defendant knowingly committed a crime of violence—including voluntary manslaughter—within the hearing of a person under the age of eighteen who was not the victim of the offense. Ind.Code § 35-38-1-7.1(a)(4). There is no restriction on minors who also happen to be family members of the victim and/or the perpetrator. Under these circumstances, we find that appellate counsel was not ineffective for refraining from raising this argument in Perry's direct appeal.

▇▇ Perry next argues that his appellate counsel was ineffective for failing to argue that the trial court afforded insufficient mitigating weight to his guilty plea. We note, however, that a guilty plea "is not necessarily a significant mitigating factor." *Cotto v. State,* 829 N.E.2d 520, 525 (Ind.2005). Specifically, "a guilty plea does not rise to the level of significant mitigation where the defendant has received a substantial benefit from the plea or where the evidence against him is such that the decision to plead guilty is merely a pragmatic one." *Wells v. State,* 836 N.E.2d 475, 479 (Ind.Ct.App.2005). Here, as discussed above, in exchange for Perry's agreement to plead guilty to two counts of class A felony voluntary manslaughter, the State dismissed its original charges of two counts of murder, thereby reducing his maximum sentence from 130

years to 100 years. I.C. §§ 35–50–2–3, –4. In light of this benefit and the significant aggravators found by the trial court, including the existence of multiple victims, the presence of the children, a lengthy criminal history, and the fact that Perry was on pretrial release for another criminal charge when he committed these offenses, this argument would not have succeeded had it been raised in his direct appeal. Thus, we cannot conclude that Perry's appellate counsel was ineffective for this reason.

Perry also argues that his appellate counsel failed to argue against the imposition of sentences skillfully enough. First, he insists that because he acted in sudden heat, he could not possibly have had time for cool reflection such that he was able to form the deliberate intent to commit the second crime. Thus, Perry argues that the two crimes should not have been considered separate episodes and consecutive sentences were improper for this reason. Essentially, Perry is arguing that multiple counts of voluntary manslaughter could never lead to consecutive sentences. That is clearly incorrect, however, inasmuch as voluntary manslaughter is statutorily defined as a crime of violence such that sentencing limitations on single episodes of criminal conduct do not apply. I.C. §§ 35–50–1–2(a), –2(c). The clear implication of this statute is that consecutive sentences for multiple counts of voluntary manslaughter are authorized, notwithstanding the element of sudden heat required to be convicted of the crime. As noted above, this court found the trial court's imposition of consecutive sentences to be proper given the fact that there were two victims. *Perry,* 845 N.E.2d at 1097. Thus, we decline to find Perry's counsel ineffective for this reason.[3]

Additionally, Perry notes that this court found that appellate counsel "oversimplifie[d]" the sentencing statement, *id.* at 1096, and observed that appellate counsel had failed to include a table of contents, chronological case summary, and PSI in the appendix, *id.* at 1094 n. 2. Perry argues that these errors establish ineffective assistance. As to the oversimplification of the argument regarding the sentencing statement, we note that Perry does not and cannot establish that an offhand comment made by this court suggests that his attorney was ineffective. Nor did the *Perry* court suggest that this oversimplification was the reason that it ruled against Perry. Thus, we do not find his attorney ineffective for this reason.

Similarly, we note that although this court observed the defects in the appendix, it explicitly found that these omissions did not result in waiver of Perry's sentencing claims. *Id.* Perry contends that the appellate court was missing vital information from the PSI, namely, information about his alleged mental illness and drug use. That is not true, however, inasmuch as this court had the transcript of the sentencing hearing, in which Perry and his attorney proffered those issues to the trial court as mitigating circumstances. Thus, Perry has failed to establish prejudice as a result of the deficiencies in the appendix prepared for his direct appeal.

The judgment of the post-conviction court is affirmed.

MAY, J., and BARNES, J., concur.

---

3. Similarly, to the extent that Perry argues that the imposition of consecutive sentences violated Indiana Code section 35–50–1–2, we merely note that, in fact, the trial court's action was explicitly authorized by that statute. Thus, this argument must fail.