**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**CARA SCHAEFER WIENEKE**
Wieneke Law Office, LLC
Plainfield, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LEE TIBBETTS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1403-PC-153 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Clark H. Rogers, Judge
Cause No. 49G22-0906-PC-55739

**September 12, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Lee Tibbetts appeals the denial of his petition for post-conviction relief, contending that the post-conviction court erred when it found that he was not denied the effective assistance of trial counsel. He raises the following restated issue for our review: whether his trial counsel was ineffective for failing to object to testimony from numerous State's witnesses that he alleges indirectly vouched for the victim's credibility and for failing to object to statements made by the prosecutor during closing argument that Tibbetts alleges impermissibly vouched for the victim's credibility.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The facts supporting Tibbetts's convictions as set forth by this court in his direct appeal are as follows:

> In January of 2009, I.O., who was born on March 7, 1996, transferred to John Marshall High School in Marion County, Indiana, for the second semester of his seventh grade year. Tibbetts was I.O.'s teacher for third-period math class. I.O. saw a school-based therapist at John Marshall on a regular basis. Tibbetts was aware that other students had called I.O. gay, and at some point Tibbetts asked the therapist: "Is [I.O.] gay or what?" *Trial Tr.* at 177.

> At some point in early March of 2009, prior to I.O.'s thirteenth birthday, Tibbetts told I.O. to stay after class as the other students moved on to the next period. I.O. sat down on a wooden chair in the corner of the classroom by the chalkboard, and Tibbetts locked the classroom door. At first, Tibbetts helped I.O. with his math and then asked how I.O.'s other classes were going. Tibbetts then asked I.O. if he "was gay," and I.O. said "no." *Id.* at 38. Tibbetts asked if I.O. had "ever been touched before," and I.O. said "no." *Id.* At that point, Tibbetts, who was seated in his chair which had wheels on it, started touching I.O.'s chest with his hands, both over and underneath I.O.'s clothes. I.O. told Tibbetts to stop, and Tibbetts stated that if I.O. said anything that he would "lower [I.O.'s] grade and fail [him]." *Id.* at 45.

2

Tibbetts untucked I.O.'s shirt and unbuckled I.O.'s pants. Tibbetts pulled I.O.'s penis out from the hole in I.O.'s boxers and started "going up and down with his hand." *Id.* at 42. Tibbetts's hand was on I.O.'s penis for five to ten minutes. Tibbetts then put I.O.'s penis in his mouth until "[w]hite stuff came out . . . into [Tibbetts's] mouth," and Tibbetts "swallowed it." *Id.* at 43-44. I.O. did not tell anyone because he was afraid.

Later in March 2009, after I.O.'s thirteenth birthday, Tibbetts again told I.O. to stay after math class and locked the classroom door. Tibbetts said to I.O., "you already know what to do." *Id.* at 51. I.O. sat down, and Tibbetts "started feeling" on I.O. and unzipped I.O.'s clothing. *Id.* at 52. Tibbetts put I.O.'s penis in his mouth until "white stuff" "came out into [Tibbetts's] mouth," and Tibbetts "swallowed it." *Id.* at 53. I.O. later went back to Tibbetts and "asked if it really happened," and Tibbetts said, "[I.O.], you know it happened." *Id.*

On a third occasion in March 2009, Tibbetts again touched I.O. on the chest and penis in his classroom. Tibbetts put I.O.'s penis in his mouth. Debra Barlowe, the school's vice principal, came to the classroom door and attempted to open the door, but the door was locked. Barlowe, who had keys for all of the school's rooms, started to look for a key which would unlock the door. Inside the classroom, Tibbetts "hurried up and got up," told I.O. "to pull [his] clothes back up and say that [Tibbetts] brought [I.O.] in for sagging,"[1] and "then [ ] ran to the door." *Id.* at 56. As Barlowe put the key into the door, Tibbetts opened the door. Barlowe entered the room, noticed I.O. in the corner of the room, and asked why I.O. was in the classroom. Tibbetts said that he had brought I.O. "in for sagging," which was against the rules at John Marshall. *Id.* Barlowe told I.O. to come with her, and as I.O. was walking out of the classroom, Tibbetts "mouthed the words 'don't tell'" to I.O. *Id.* at 59.

Sometime in April of 2009, I.O. was putting away laptop computers in the middle of Tibbetts's classroom when Tibbetts told him to stay. Tibbetts started touching I.O. behind the laptop computer storage cabinet. I.O. said that "people will be able to see us," and Tibbetts stated "they can't see us." *Id.* at 63. Tibbetts unzipped I.O.'s clothing, took out I.O.'s penis and put it in his mouth until "[w]hite stuff came out." *Id.* When Tibbetts was sucking I.O.'s penis, Tibbetts would sometimes touch his own penis on the outside of his clothing.

---

[1] According to I.O., "sagging" meant "[h]aving my pants below my waist." *Trial Tr.* at 58.

In May 2009, I.O. told a classmate friend what Tibbetts was doing, although I.O. did not tell the classmate everything because he did not want his friend to think that he was gay. On May 20, 2009, I.O. told his school-based therapist that he had been "sexually assaulted." *Id.* at 170. On that same day, Tibbetts called the cell phone of I.O.'s mother five times while she was at work, but Tibbetts spoke to I.O.'s mother only twice. During the first call in which Tibbetts and I.O.'s mother spoke with each other, Tibbetts asked I.O.'s mother if I.O. had said anything to her about Tibbetts, if I.O. was angry with him, and if I.O. had said that Tibbetts "did anything to him." *Id.* at 214. During the second call, Tibbetts told I.O.'s mother that I.O. was "in with the Assistant Principal and the Social Worker" and "said something about calling the union, do I need to call the union." *Id.* at 215.

*Tibbetts v. State*, No. 49A05-1010-CR-609 (Ind. Ct. App. Aug. 15, 2010).

On June 16, 2009, the State charged Tibbetts with eight counts, which were later amended to the following seven counts, four counts of Class A felony child molesting, two counts of Class C felony child molesting, and one count of Class D felony vicarious sexual gratification. In August 2010, a jury trial was held, and the State called witnesses to whom I.O. disclosed the allegations about Tibbetts. The State called A.D. and J.H., who were classmates of I.O. A.D. testified that I.O. told him that something happened between Tibbetts and I.O., and A.D. then told J.H. *Trial Tr.* at 142. On cross-examination, A.D. stated that I.O. told him that Tibbetts had touched his leg inappropriately, but did not mention oral sex. *Id.* at 144-45. J.H. testified that A.D. told her about the allegations regarding Tibbetts, and J.H. then asked I.O. about them. *Id.* at 152-53. J.H. went with I.O. to tell Shawnieka Pope ("Pope"), the school social worker, about the allegations. *Id.* at 157. On cross-examination, J.H. testified that I.O. had told her that Tibbetts had touched I.O.'s leg and made him feel uncomfortable. *Id.* at 158.

4

The State also called Leah Marone ("Marone"), I.O.'s school therapist, who testified that she encountered I.O. outside of Pope's office, asked him what was going on, and he replied that he had been sexually assaulted. *Id.* at 170. Marone stated that, after disclosing the allegations, I.O. "seemed more at ease, or kind of, you know, kind of as a weight had been lifted off." *Id.* at 175. She accompanied I.O. to Pope's office where he told Pope the allegations and wrote down a witness statement. Pope also testified that I.O. appeared to get more comfortable as he spoke with her and that "as he kind of got it off his chest, he seemed to be in a better place." *Id.* at 203. Pope then told Jan Larson ("Larson"), the vice principal, about the allegations and filed a Child Protective Services report. The State called Larson, who testified as to the steps taken to notify the authorities of I.O.'s allegations. *Id.* at 327. The State also called N.J., I.O.'s mother, who testified as to how she learned of the investigation and what steps she took to notify law enforcement of the allegations. *Id.* at 216-19.

> In its closing argument, the State argued, in pertinent part:
>
> You can convict on [I.O.'s] testimony because [I.O.] was consistent; because there's corroboration. And those two things together make [I.O.] credible. You watched his demeanor. You observed him testify yesterday and today. [I.O.] was consistent and he is credible. He told everyone the same story. He told [A.D.] he was touched. He told [J.H.] he was touched.
>
> . . . .
>
> He speaks to Ms. Pope and he speaks to Ms. [Marone]. And he tells them that Mr. Tibbetts is putting his mouth on [I.O.'s] penis. This is the first time the full story has come out. But he tells them both what happened. And then he writes a statement about what happened. He tells Detective Greg Norris what happened. . . .

*Id.* at 368-69. During rebuttal, the State argued as follows:

5

[I.O.] was credible. Yes, this is the sort of case that you can feel comfortable with a guilty verdict beyond a reasonable doubt. [I.O.] was credible. And if you believe him, then Mr. Tibbetts is guilty. He testified before you yesterday and today and you observed his demeanor. You observed whether or not you believed he was being truthful or not, and he was. You can rely on [I.O.] when you find this man guilty. Absolutely. And be comfortable when you go to bed tonight.

*Id*. at 408. At the conclusion of the trial, the jury found Tibbetts guilty as charged, and the trial court sentenced him to an aggregate forty years executed.

Tibbetts filed a direct appeal with this court and raised the following three issues: (1) whether testimony from a police officer was improper vouching; (2) double jeopardy; and (3) the appropriateness of his sentence. A panel of this court affirmed Tibbetts's convictions and sentence in an unpublished memorandum decision on August 15, 2011. Tibbetts filed a petition for post-conviction relief, and an evidentiary hearing was held. On February 12, 2014, the post-conviction court issued findings of fact and conclusions thereon, denying Tibbetts's petition. Tibbetts now appeals.

**DISCUSSION AND DECISION**

Post-conviction proceedings do not afford the petitioner an opportunity for a super appeal, but rather, provide the opportunity to raise issues that were unknown or unavailable at the time of the original trial or the direct appeal. *Ben-Yisrayl v. State*, 738 N.E.2d 253, 258 (Ind. 2000), *cert. denied,* 534 U.S. 1164 (2002); *Wieland v. State*, 848 N.E.2d 679, 681 (Ind. Ct App. 2006), *trans. denied*, *cert. denied,* 549 U.S. 1038 (2006). The proceedings do not substitute for a direct appeal and provide only a narrow remedy for subsequent collateral challenges to convictions. *Ben-Yisrayl*, 738 N.E.2d at 258. The petitioner for

post-conviction relief bears the burden of proving the grounds by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5).

When a petitioner appeals a denial of post-conviction relief, he appeals a negative judgment. *Fisher v. State*, 878 N.E.2d 457, 463 (Ind. Ct. App. 2007), *trans. denied*. The petitioner must establish that the evidence as a whole unmistakably and unerringly leads to a conclusion contrary to that of the post-conviction court. *Id.* We will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion. *Wright v. State*, 881 N.E.2d 1018, 1022 (Ind. Ct. App. 2008), *trans. denied*. The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Lindsey v. State*, 888 N.E.2d 319, 322 (Ind. Ct. App. 2008), *trans. denied*. We accept the post-conviction court's findings of fact unless they are clearly erroneous, and no deference is given to its conclusions of law. *Fisher*, 878 N.E.2d at 463.

Tibbetts argues that the post-conviction court erred in denying his petition for post-conviction relief because he received ineffective assistance of counsel during his trial. First, he contends that his trial counsel was ineffective for failing to object to several of the State's witnesses because he alleges that their testimony served no other purpose than to improperly vouch for I.O.'s credibility. He asserts that the challenged testimony was only relevant as course-of-investigation evidence or indirect vouching for the victim's credibility, neither of which were admissible. Second, Tibbetts claims that his trial counsel was ineffective for failing to object to statements made by the prosecutor during closing argument that constituted impermissible vouching for I.O.'s credibility.

When evaluating a claim of ineffective assistance of counsel, we apply the two-part test articulated in *Strickland v. Washington,* 466 U.S. 668 (1984). *Perry v. State*, 904 N.E.2d 302, 308 (Ind. Ct. App. 2009) (citing *Pinkins v. State,* 799 N.E.2d 1079, 1093 (Ind. Ct. App. 2003), *trans. denied*), *trans. denied*. First, the defendant must show that counsel's performance was deficient. *Id*. This requires a showing that counsel's representation fell below an objective standard of reasonableness and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed to the defendant by the Sixth and Fourteenth Amendments. *Id.* Second, the defendant must show that the deficient performance resulted in prejudice. *Id.* To establish prejudice, a defendant must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* In order to prove ineffective assistance of counsel due to the failure to object, a defendant must prove that an objection would have been sustained if made and that he was prejudiced by the failure. *Kubsch v. State*, 934 N.E.2d 1138, 1150 (Ind. 2010).

We will not lightly speculate as to what may or may not have been an advantageous trial strategy, as counsel should be given deference in choosing a trial strategy that, at the time and under the circumstances, seems best. *Perry*, 904 N.E.2d at 308 (citing *Whitener v. State,* 696 N.E.2d 40, 42 (Ind. 1998)). If a claim of ineffective assistance can be disposed of by analyzing the prejudice prong alone, we will do so. *Id*. (citing *Wentz v. State,* 766 N.E.2d 351, 360 (Ind. 2002)). Further, counsel's performance is presumed effective, and

a defendant must offer strong and convincing evidence to overcome this presumption. *Williams v. State*, 771 N.E.2d 70, 73 (Ind. 2002).

Tibbetts's initial argument is that his trial counsel's performance was deficient for failing to object to improper vouching testimony by six of the State's witnesses. At trial, the State called six witnesses to explain the timeline of I.O.'s disclosure of the allegations against Tibbetts. A.D. and J.H., classmates of I.O., were the first individuals that I.O. told of the allegations. J.H. accompanied I.O. to tell Pope about the allegations, and Marone encountered I.O. in the hallway while he was waiting for Pope. While in Pope's office. I.O. told both Pope and Marone about what had occurred with Tibbetts. Larson testified about what steps were taken to initiate the investigation and to contact the authorities after he was alerted to the allegations against Tibbetts. Lastly, I.O.'s mother testified to how she learned of the investigation and what steps she took to contact authorities.

Tibbetts first contends that the testimony by the State's witnesses was inadmissible because it was course-of-investigation evidence, which is generally irrelevant. We disagree. The statements elicited by the State from these witnesses were not assertions of fact susceptible of being true or false; they were merely statements that I.O. had shared information about Tibbetts's conduct with that witness and that the witness acted accordingly. This evidence was relevant to show how the allegations made by I.O. about Tibbetts came to light and what steps were taken to report it. We, therefore, conclude that any objection to the challenged evidence would not have been sustained. Further, to the extent any hearsay evidence was admitted, it was elicited by the defense on cross-examination. Tibbetts's attorney testified at the post-conviction hearing that his strategy

9

at trial was to question the credibility of I.O, specifically that I.O. had made inconsistent statements. *P-CR Tr.* at 5. On cross, Tibbetts's attorney elicited testimony from A.D. that I.O. had told him that Tibbetts had touched I.O. on the leg, but there were no allegations of oral sex; defense counsel also elicited testimony from J.H. that I.O. had told her that Tibbetts had touched I.O. on the leg, but nothing else. *Trial Tr.* at 144-45, 158. Tibbetts's attorney then focused on I.O.'s inconsistent statements during closing argument. Any hearsay evidence was, therefore, elicited as part of the defense's trial strategy. We do not speculate as to what may or may not have been an advantageous trial strategy, as counsel should be given deference in choosing a trial strategy that, at the time and under the circumstances, seems best. *Perry*, 904 N.E.2d at 308.

Tibbetts next contends that the testimony by the State's witnesses was inadmissible because it constituted indirect vouching, which is not permissible. In support of his argument that indirect vouching testimony is not admissible, Tibbetts cites to *Hoglund v. State*, 962 N.E.2d 1230 (Ind. 2012), which held that "testimony concerning whether an alleged child victim 'is not prone to exaggerate or fantasize about sexual matters' is an indirect but nonetheless functional equivalent of saying the child is 'telling the truth'" and a violation of Indiana Evidence Rule 704(b), which specifically prohibits witnesses from testifying as to whether another witness testified truthfully. *Id.* at 1236; *see also Kindred v. State*, 973 N.E.2d 1245, 1258 (Ind. Ct. App. 2012) (holding that testimony about whether child had been coached amounted to same improper commentary on child's truthfulness as testimony about whether child is prone to exaggerate or fantasize about sexual matters), *trans. denied*.

*Hoglund*, however, was not decided until almost two years after Tibbetts's 2010 trial.  At the time of Tibbetts's trial, *Lawrence v. State*, 464 N.E.2d 923 (Ind. 1984), which was overruled by *Hoglund*, held that courts were justified in "permitting some accrediting of child witnesses in the form of opinions from parents, teachers, and others having adequate experience with the child, that the child is not prone to exaggerate or fantasize about sexual matters." *Lawrence*, 464 N.E.2d at 925.  Counsel's representation cannot be deemed to have fallen below an objective standard of reasonableness for failing to anticipate a change in the law.  *Overstreet v. State*, 877 N.E.2d 144, 161-62 (Ind. 2007) (citing *Harrison v. State*, 707 N.E.2d 767, 776 (Ind. 1999, *cert, denied*, 529 U.S. 1088 (2000)) (stating failure to anticipate or effectuate change in existing law does not constitute ineffective assistance under *Strickland*), *cert. denied*, 555 U.S. 972 (2008).  Therefore, to the extent Tibbetts argues that the challenged testimony was inadmissible under *Hoglund* merely because it was indirect vouching, it is unlikely that any objection by his trial counsel would have been sustained.

Tibbetts specifically claims that testimony by Marone and Pope about I.O.'s demeanor constituted impermissible vouching.  Marone testified that I.O. "seemed more at ease, or kind of, you know, kind of as a weight had been lifted off." *Trial Tr*. at 175.  Pope testified that I.O "kind of got if off his chest, he seemed to be in a better place." *Id*. at 203.  This was not impermissible vouching.  The State did not attempt to elicit testimony from the witnesses about whether they believed I.O.'s allegations to be true; rather, the State merely attempted to elicit testimony regarding I.O.'s behavior when talking about the allegations.

11

Additionally, Tibbetts asserts that the fact that each witness took steps to report I.O.'s allegations implies that they believed his story and was, therefore, impermissible indirect vouching. Tibbetts has not cited to any authority for this position. First, even if this testimony is deemed to be indirect vouching, such evidence was admissible at the time of Tibbetts's trial. *See Lawrence*, 464 N.E.2d at 925. Further, this evidence was simply testimony regarding what steps were taken to report I.O.'s allegations and how such allegations came to the attention of the authorities. We conclude that Tibbetts has failed to show ineffective assistance of trial counsel for failing to object to this testimony because any objections to the evidence due to indirect vouching would not have been sustained.

Because we conclude that any objection made by Tibbetts's trial counsel to the challenged testimony would not have been sustained, we also find that Tibbetts has not shown that he was prejudiced by trial counsel's failure to object. Moreover, the challenged evidence was merely testimony regarding how I.O.'s allegations became known to authorities. None of the witnesses explicitly repeated I.O.'s specific allegations in detail. The jury heard the allegations from I.O. when he testified that, on four different occasions, Tibbetts told I.O. to stay after math class, rubbed I.O.'s chest, masturbated I.O.'s penis, and performed oral sex on I.O. *Trial Tr.* at 36-44, 50-56, 60-63. Additionally, around the time that the molestations were occurring, Tibbetts asked Marone, "Is [I.O.] gay or what?" *Id*. at 177. On May 20, 2009, after Tibbetts thought that I.O. had reported the molestations, Tibbetts called I.O.'s mother, N.J., five times. He spoke with N.J. twice and asked if I.O. was angry with Tibbett and if I.O. had said that Tibbetts "did anything to him." *Id*. at 212-14. Lastly, at the time of one of the molestations, Barlowe found Tibbetts and I.O. locked

in the classroom alone together. *Id*. at 289, 291-92, 296. Due to the substantial additional evidence of Tibbetts's guilt, we conclude that Tibbetts has not shown prejudice.

Tibbetts also argues that his trial counsel was ineffective for failing to object to statements made by the prosecutor during closing argument that he alleges constituted impermissible vouching. To prevail on a claim of ineffective assistance due to the failure to object, the defendant must show an objection would have been sustained if made. *Kubsch*, 934 N.E.2d at 1150. Although a prosecutor may not personally vouch for a witness, "'a prosecutor may comment on the credibility of the witnesses as long as the assertions are based on reasons which arise from the evidence.'" *Cooper v. State*, 854 N.E.2d 831, 836 (Ind. 2006). Prosecutors are also "entitled to respond to allegations and inferences raised by the defense even if the prosecutor's response would otherwise be objectionable." *Id*.

Here, as the post-conviction court found, "at no time . . ., did the prosecutor say it was [her] personal opinion that the witness was credible." *Appellant's App*. at 77. Rather, the prosecutor argued that, based on consistency of I.O.'s testimony and the corroboration by other witnesses, I.O.'s testimony was credible. These were permissible assertions "based on reasons which arise from the evidence." *Cooper*, 854 N.E.2d at 836. Further, the State was allowed to respond to allegations and inferences raised by the defense even if such response would otherwise be objectionable. Tibbetts's strategy at trial was that I.O. was not credible partly based on "the lapse between his reporting . . . or the time of the alleged incident and his reporting of it." *P-CR Tr*. at 5. In closing, the defense attacked I.O.'s credibility by arguing that his testimony was rehearsed and inconsistent, among other

things.  The defense attorney directly attacked the credibility of I.O., and the State was allowed to respond to these allegations and inferences raised by Tibbetts's attorney.  Tibbetts cannot show that any objection raised by his trial counsel would have been sustained.

Moreover, Tibbetts cannot show that he was prejudiced by trial counsel's failure to object.  The jury heard I.O. testify that, on four different occasions, Tibbetts had molested him.  Testimony was also presented that Tibbetts had asked Marone, around the time the molestations were occurring, if I.O. was gay.  Further, after Tibbetts believed that I.O. had reported the molestations, he contacted I.O.'s mother and inquired as to whether I.O. was angry with Tibbetts or had said Tibbetts had done anything to him.  Barlowe also testified that she had found Tibbetts and I.O. inside of a locked classroom, which was a situation that gave Tibbetts an opportunity to molest I.O.  We, therefore, conclude that Tibbetts has not shown prejudice.  Tibbetts has not shown that his trial counsel was ineffective, and the post-conviction court did not err in denying his petition for post-conviction relief.

Affirmed.

BAKER, J., and ROBB, J., concur.