## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Mar 16 2016, 8:40 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Donald E.C. Leicht
Kokomo, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jason A. Jones,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | March 16, 2016<br><br>Court of Appeals Case No.<br>34A02-1508-CR-1207<br><br>Appeal from the Howard Superior Court<br><br>The Honorable William C. Menges, Jr., Judge<br><br>Trial Court Cause No.<br>34D01-1002-FB-175 |

**Mathias, Judge.**

[1] Jason A. Jones ("Jones") appeals the order of the Howard Superior Court revoking his probation. On appeal, Jones presents two issues, which we restate

as: (1) whether Jones was denied his right to a hearing before an impartial judge, and (2) whether the trial court improperly denied Jones credit for educational credit time he earned while incarcerated.

[2] We affirm.

## Facts and Procedural History

[3] In 2010, Jones was convicted of Class B felony dealing in methamphetamine and Class B misdemeanor visiting a common nuisance. Jones was sentenced to an aggregate term of fifteen years with ten years executed and five years suspended to probation. In 2013, Jones successfully petitioned the trial court to modify his sentence, and on April 11 of that year, the trial court ordered the remainder of Jones's executed sentence to be suspended to probation.

[4] Hardly three months later, on July 31, 2013, the State filed a petition to revoke Jones's suspended sentence. Jones admitted that he violated the terms of his probation, and the court modified the terms of Jones's probation to include a requirement that he successfully complete the court's "Re-Entry" program.

[5] On March 11, 2015, the case manager overseeing Jones in the Re-Entry program filed a petition to terminate Jones's participation in the program for lying to a case manager. At the beginning of the initial hearing held that same day, the trial court referenced the behavior alleged to have been committed by Jones:

> [Y]ou've had a series of stories regarding pills that are extremely incredible, verging almost on the, you know, like excuses I get

where somebody's caught with drugs in their pocket and they come to court and they say well, they weren't my pants. I find it very, very interesting that when somebody shows up at your house to do a pill count, the pills have been washed. I find it very interesting that when you're supposed to be bringing your pills to Brian to be counted that all a sudden you lose the pill bottle in Krogers [sic] and then you find it. You know, it just doesn't make any sense; however, I don't have to concern myself with that. What I concern myself with is the fact that you were asked by Brian whether or not you told your service providers that you were a drug addict and you said to him, yes, every one of them. So you got a diagnosis from Kokomo Psychiatric Center.

* * *

Stephanie writes a prescription for you. Stephanie was not told that you had a substance abuse issue. Stephanie was not told that you'd been convicted of drug related offenses. You came back, she said I need you to take a drug test and you left without taking the test and went to Brittany and told Brittany that you were changing from Stephanie because you had a prior relationship with somebody who worked in that office and so you weren't comfortable going with Stephanie or apparently giving the required drug screens and you neglected to tell Brittany that you were a drug addict or that you've had any prior criminal history regarding drugs and then you flat-out lied to Brian about it. You've been in the program long enough to know that lying is not acceptable.

Tr. pp. 2-3. The trial court then advised Jones of the rights he had before he was terminated from the Re-Entry program:

Please be advised that you have certain rights in connection with that proceeding. You have the right to have a hearing in which the State must prove the allegations against you by a preponderance of the evidence. You have a right to be

> represented by an attorney and if you cannot afford an attorney, one will be appointed to represent you at public expense. You have the right to confront, question and cross-examine the witnesses against you. You have the right to an opportunity to be heard, present evidence and to subpoena witnesses to come to court to testify in your defense. Do you understand those rights?

*Id*. at 3-4. Jones responded in the affirmative and requested an evidentiary hearing on this matter, and the trial court appointed him counsel.

[6]    At the evidentiary hearing held on May 29, 2015, the State presented evidence that Jones had lied to his service providers regarding his substance abuse problem. The trial court then stated from the bench:

> I think the State has proved by a preponderance of the evidence that he has been deceptive and, therefore, we will show that the defendant is terminated from the Howard County Re-Entry Program. The court finds probable cause to believe that the defendant has violated the terms of his probation. He is to be held without bond pending further order of the court in connection with that. Probation Department is to be given 72 hours to file a petition to revoke.

Tr. p. 46. The State then filed a petition to revoke Jones's probation that same day.

[7]    A probation revocation hearing was held on July 8, 2015.  At this hearing, Jones admitted that he had violated the terms of his probation by being removed from the Re-Entry program. The trial court accepted this admission and set the matter for a dispositional hearing on July 22, 2015. At the

dispositional hearing, Jones argued that he should be given a chance to participate in inpatient therapy. The trial court disagreed and stated:

> The problem I have is, Mr. Jones, is you have failed at the most intensive supervision that we have available in our community. And so the pleas to put you back into community supervision of some sort, is really suggesting that we put you on less supervision than you had while you were in Re-Entry, which says to me basically you will succeed or if you succeed on less supervision it is because you have a greater chance of not getting caught. Right off the bat you found yourself charged with a new crime in Cass County. We worked with that. And then we've had repeated issues since then. I don't think there's anything left that we can do in the community. Accordingly I'm going to impose the balance of your suspended sentence, which the court finds to be 2,829 days, give you credit for 146 actual days or 292 days day-for-day credit served while awaiting disposition in this matter and as the, as the sanctions. He's remanded to the custody of the Sheriff for transportation to the Department of Correction.

Tr. p. 78.

[8] Jones then requested that the trial court award him credit for a "6 month Therapeutic Community time cut" that Jones had received while in the custody of the Department of Correction as well as a "90 day time cut" he received for completing a vocational business technology program. Tr. pp. 72, 79. The trial court responded:

> That, I think, becomes a question is that a reduction or is it, I don't think it's a reduction of the executed sentence. I think it is in fact an advancement of the earliest possible release date and we trumped the heck out of that when we modified the sentence and brought him back. That made his earliest possible release

date October of 2013 as opposed to however many years after that with the two reductions that he was otherwise on. It's up to, as far as I'm concerned it's up to the Department of Correction to determine what credit time he's entitled to or his behavior while he's in the Department of Correction in connection with this cause either before or after we modified the sentence.

Tr. pp. 79-80. Jones now appeals.

## I. Right to Impartial Judge

Jones first claims that he was denied his right to an impartial judge, focusing on the comments made by the trial court at the initial hearing indicating that it believed the allegations of the petition. Jones claims that the trial court had pre-determined his guilt and that he was therefore denied due process of law. Jones's claim fails for a variety of reasons.

First, Jones effectively "pleaded guilty" to the probation violation when he admitted to violating the terms of his probation. We have held before that the sole avenue for a defendant who has admitted or pled guilty to a probation violation to challenge a revocation of probation is through a post-conviction relief petition. *Huffman v. State*, 822 N.E.2d 656, 660 (Ind. Ct. App. 2005). Indeed, Indiana Post-Conviction Rule 1(1)(a)(5) specifically allows a defendant to allege that his or her probation was "unlawfully revoked."

Even if a direct appeal were the proper venue to present this claim, Jones made no objection to the trial court's comments that he now claims were inappropriate. To preserve a claim that a trial court judge was inappropriately biased against him, a defendant must object to or otherwise challenge the trial

court's remarks. *Garrett v. State*, 737 N.E.2d 388, 391 (Ind. 2000). "Where a defendant fails to object or otherwise challenge a trial judge's remarks, any alleged error is waived on appeal." *Id.*; *see also Mitchell v. State*, 726 N.E.2d 1228, 1235 (Ind. 2000) ("At trial, the defendant failed to object to these allegedly inappropriate comments by the judge. A failure to object at trial results in waiver of the issue on appeal."), *abrogated in part on other grounds by Beattie v. State*, 924 N.E.2d 643 (Ind. 2010). Accordingly, Jones's claims regarding the trial court's comments are waived.

[12] Jones contends that a claim of judicial bias may be raised even if no objection was raised at trial, citing *Decker v. State*, 515 N.E.2d 1129 (Ind. Ct. App. 1987), which in turn cited *Kennedy v. State,* 258 Ind. 211, 280 N.E.2d 611 (1972). In *Kennedy*, our supreme court refused to apply the waiver doctrine to incidents of improper judicial intervention, even where no objection was raised, because "[a] fair trial by an impartial judge and jury is an essential element in due process." *Kennedy*, 258 Ind. at 218, 280 N.E.2d at 615. However, since *Kennedy* and *Decker* were decided, our supreme court has clearly held that an objection is required to preserve a claim of judicial bias. *See Garrett*, 737 N.E.2d at 391; *Mitchell*, 726 N.E.2d at 1235.

[13] Furthermore, in *Decker*, the court simply applied the fundamental error exception to the general rule requiring a contemporaneous objection. *See Decker*, 515 N.E.2d at 1132. Here, Jones does not set forth the standard of review for a claim of fundamental error or develop an argument under this standard. Instead, after quoting the trial court's comments, which he claims indicates that

the trial court had predetermined his guilt, Jones argues that "the Trial Court was not impartial, and Jones was denied a fair trial in violation of his rights to due process. This denial of due process was not 'cured' when Jones pled True to a later probation violation." Appellant's Br. at 14. Any claim of fundamental error is therefore further waived for failure to present a cogent argument. *See Hollingsworth v. State*, 987 N.E.2d 1096, 1098-99 (Ind. Ct. App. 2013) (holding that defendant waived fundamental error claim where she failed to present cogent argument regarding fundamental error in brief), *trans. denied*; *Absher v. State*, 866 N.E.2d 350, 355 (Ind. Ct. App. 2007) (holding that the simple assertion of a legal conclusion without any cogent argument or citation to authority is insufficient to establish fundamental error).

[14] Even if we were to consider Jones's claim of fundamental error on the merits, he would not prevail. When the impartiality of the trial judge is challenged on appeal, we presume the judge is unbiased and unprejudiced. *Perry v. State*, 904 N.E.2d 302, 307 (Ind. Ct. App. 2009), *trans. denied*. To rebut that presumption, the defendant must establish from the judge's conduct actual bias or prejudice that places the defendant in jeopardy. *Id*. To assess whether the judge has crossed the barrier into impartiality, we examine both the judge's actions and demeanor. *Id*. at 307-08. Adverse rulings alone are insufficient to establish bias. *Id*. at 308. Furthermore, bias will rarely, if ever, be found on the face of rulings alone because the defendant must show an improper or extra-judicial factor or such a high degree of favoritism that a fair judgment was impossible. *Id*.

Here, at the initial hearing, the trial court discussed Jones's alleged behavior, including his claims that he had lost his prescription medications and lied to his service providers. However, immediately after this, the court advised Jones of his rights, including that the State was required to prove that he violated the terms of the court's Re-Entry program, that he had the right to cross-examine the State's witnesses, and that he had the right to present evidence in his defense. The court then noted it had probable cause to believe that a probation violation had occurred, thereby justifying holding Jones in custody until this could be determined. *See Johnson v. State*, 957 N.E.2d 660, 665 (Ind. Ct. App. 2011) (noting that the U.S. Supreme Court has held that probationers are entitled to a preliminary hearing in order to determine whether there is probable cause to believe that the probationer violated the terms of his probation) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 485 (1972)). We therefore agree with the State that the trial court's remarks on Jones's alleged behavior can be seen as simply explaining the trial court's finding of probable cause. The remaining remarks referred to by Jones are simply rulings by the trial court, which are insufficient to support his claim of bias. *See Perry*, 904 N.E.2d at 307.

Nor do we agree with Jones that the trial court's probable cause determination equates to predetermining his "guilt" prior to the evidentiary hearing. Jones is simply incorrect in claiming that "probable cause" and "preponderance of the evidence" are effectively equivalent. *See Heaton v. State*, 984 N.E.2d 614 (Ind. 2013) (holding that trial courts are required to use a preponderance of the

evidence standard in determining whether a probationer has violated the terms of his probation, not whether probable cause exists to believe he has done so).

For the foregoing reasons, Jones has not established that the trial court was improperly biased against him.

## II. Credit Time Determination

Jones also claims that the trial court erred by failing to award him credit time for a "6 month Therapeutic Community time cut" and a "90 day time cut" he received for completing a vocational program. However, Jones provides no citation to any authority explaining or supporting his argument, so we have no idea on what authority Jones's claim of credit time is based.[1] Accordingly, we

---

[1] The entirety of Jones's argument on this issue provides:

> Lastly, Jones argues that the Trial Court improperly calculated and failed to document his credit time. The Trial Court's "analysis" resulting in its credit-time grant is detailed on Tr. pp. 77-80. Particular attention is drawn to the Trial Court's statement on Tr. p. 80:
>
> > It's up to, as far as I'm concerned [it's] up to the Department of Correction to determine what credit time he's entitled to or his behavior while he's in the Department of Correction with this cause either before or after we modified the sentence.
>
> First, a sentencing order, including credit time, is an appealable issue. The Trial Court's decision makes appeal "impossible" because it anchors no number that can be appealed. Jones had obviously earned credit time while in the Department of Correction when his sentence was first modified.
>
> Secondly, the Trial Court's decision provides no guidance whatsoever to the Department of Correction. How can the Department of Correction[] read the credit-time number in the Sentencing Order and know whether it includes or doesn't include credit time "either before" the date of the Sentencing Order. It can't, and the Trial Court's abdication of its responsibility to anchor an appealable Sentencing Order gives too great a risk that Jones (or any other defendant) will be denied credit in the Department of Correction[] earned "either before" the Sentencing Order.
>
> One assumes that denial of appealablity and/or denial of earned credit time would not be the intention of an impartial magistrate. One might assume this Court might wonder why a Trial Court should abdicate its obligation to anchor credit time and force cases appealing that issue into this Court.

Appellant's Br. at 14-15 (record citations omitted).

consider this argument waived. *See* Ind. Appellate Rule 46(a)(8)(a) (providing that an appellate argument "*must* contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention *must* be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on.") (emphasis added); *Donaldson v. State*, 904 N.E.2d 294, 301 (Ind. Ct. App. 2009) (citing Appellate Rule 46(a)(8)(a) in concluding that defendant waived appellate argument by failing to make a cogent argument supported by citation to authority).

[19]     In its response, the State treats Jones's credit time argument as a claim for educational credit time under Indiana Code section 35-50-6-3.3(b), which provides in relevant part:

> (b)  In addition to any educational credit that a person earns under subsection (a), or good time credit a person earns under section 3 or 3.1 of this chapter, a person may earn educational credit if, while confined by the department of correction, the person:
>
> > (1) is in credit Class I, Class A, or Class B;
> >
> > (2) demonstrates a pattern consistent with rehabilitation; and
> >
> > (3) successfully completes requirements to obtain at least one (1) of the following:
> >
> > > *(A)  A certificate of completion of a career and technical or vocational education program approved by the department of correction.*
> > >
> > > *(B)  A certificate of completion of a substance abuse program approved by the department of correction.*

(C) A certificate of completion of a literacy and basic life skills program approved by the department of correction.

(D) A certificate of completion of a reformative program approved by the department of correction.

I.C. § 35-50-6-3.3(b) (emphasis added). Assuming that the "time cuts" to which Jones refers are educational credits earned under this section, we address Jones's argument, as we understand it.

[20] Jones appears to argue that the trial court denied him the six months and ninety days credit he earned for completing certain educational programs while incarcerated. However, such credit time does not reduce a defendant's sentence; it is instead subtracted from the "release date that would otherwise apply" to the defendant. *Randolph v. Buss*, 956 N.E.2d 38, 41 (Ind. Ct. App. 2011) (citing I.C. § 35-50-6-3.3(e)), *trans. denied*.

[21] In *Randolph*, the defendant had earned 730 days of educational credit time, but at the time of his release on parole, the defendant had used only 558 of these days. *Id.* at 39. When he violated the terms of his parole and was sent back to prison, Randolph claimed that he was entitled to some of the remaining credit days he had earned. When the Department of Correction refused to do so, Randolph filed for a writ of habeas corpus. On appeal from the trial court's denial to issue a writ of habeas corpus, we held that Randolph was not entitled to the unused credit time. We noted that the General Assembly had removed language from the governing statutes providing that the Department of Correction could not deprive an inmate of educational credit time. *Id.* at 40-41

(citing I.C. § 35-50-6-3.3). We therefore concluded that "[t]he legislature intended to give the Department of Correction discretion whether to deprive prisoners of credit time earned." *Id.* at 41. Since some of the credit time he earned had been applied to give Randolph an earlier release on parole, the Department of Correction was within its discretion to deprive Randolph of the remaining unused credit time. *Id.*

[22]  It appears that a similar situation occurred here. In 2010, Jones was sentenced to an executed term of ten years. Assuming Jones received Class I credit time, his scheduled release date would have been in 2015—five years after his incarceration began.[2] However, while he was incarcerated, Jones apparently earned the six months and ninety days credit time at issue, which would have been subtracted from his release date, placing his release date at some point in 2014. However, prior to that, in 2013, Jones successfully petitioned the trial court to modify his sentence to suspend the remaining portion of his executed sentence to probation.

[23]  Thus, as in *Randolph*, at the time he was released from incarceration, Jones had not used all of his educational credit time. However, Jones did not successfully complete his probation, just like the defendant in *Randolph* who did not successfully complete his parole. As in *Randolph*, upon Jones's return to prison,

---

[2] *See* Ind. Code § 35-50-6-3(a)(b) (providing that, for a person convicted before July 1, 2014, a person assigned to Class I earns one day of good time credit for each day the person is imprisoned for a crime or confined awaiting trial or sentencing); Ind. Code § 35-50-6-4(a) (2008) (providing that an incarcerated person is initially assigned to Class I).

it will be within the discretion of the Department of Correction to determine whether Jones should receive credit for the unused portion of his educational credit time. *See Randolph,* 956 N.E.2d at 40-41. Accordingly, the trial court did not err in declining to give Jones credit for the educational credit time he had earned, as this decision rests with the Department of Correction.

## Conclusion

[24] Jones did not properly preserve his claim that he was denied his right to a hearing before an impartial judge. However, even on the merits, Jones's claims that the trial court judge was biased against him fails. Also, Jones has not established that the trial court erred by declining to give him credit for educational credit time he earned while incarcerated.

[25] Affirmed.

Kirsch, J., and Brown, J., concur.