## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 14 2017, 10:04 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT, PRO SE

James McDuffy
Carlisle, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| James McDuffy,<br>*Appellant-Petitioner*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Respondent*. | December 14, 2017<br><br>Court of Appeals Case No.<br>49A05-1612-PC-2834<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Mark D. Stoner, Judge<br><br>The Honorable Jeffrey L. Marchal, Magistrate<br><br>Trial Court Cause No.<br>49G06-0012-PC-222257 |

**Brown, Judge.**

[1] James McDuffy, pro se, appeals the denial of his petition for post-conviction relief. He raises several issues which we revise and restate as:

> I. Whether the post-conviction court abused its discretion in denying his requests to subpoena an attorney, obtain certain documents, and transfer to the elected judge;
>
> II. Whether he established that he had been deprived of the effective assistance of counsel; and
>
> III. Whether the post-conviction court was biased against him.

We affirm.

## Facts and Procedural History

[2] In December 2000, the State charged McDuffy with burglary under Count I and theft under Count II after he was waived into adult court, and Attorney Marla Thomas was appointed to represent him. On January 4, 2001, the court held a hearing on bond reduction at which McDuffy appeared in person and by Attorney Thomas. On February 6, 2001, the court held a pre-trial conference at which McDuffy appeared in person and by counsel Attorney David Wyser for Attorney Thomas, McDuffy rejected the State's offer, there was a joint continuance for further discovery, and other matters were scheduled.[1] Attorney Thomas appeared on behalf of McDuffy for all subsequent hearings including

---

[1] The post-conviction court found that Attorney Wyser's involvement in this case was limited to his appearance on February 6, 2001, as a substitute for Attorney Thomas. The State's offer was that McDuffy would plead guilty to burglary as a class B felony, the State would dismiss the count for theft, and there would be a cap on the executed portion of McDuffy's sentence of ten years.

the guilty plea and sentencing hearings. McDuffy ultimately pled guilty to theft as a class D felony under Count II, and the court dismissed the charge under Count I and sentenced McDuffy to 545 days with 82 days executed for time served and 463 days suspended, and placed him on probation for 365 days. The order of probation required McDuffy to complete thirty hours of community service work, pay total court ordered fees of $325, and obtain his GED through the MLK Multi-Service Center.[2]

[3] On August 27, 2001, the probation department filed a notice of violation of probation alleging that McDuffy had been arrested and charged with a new offense, battery, under another cause number, and also had failed to make a good faith effort toward payment of his financial obligation.[3] An entry in the chronological case summary ("CCS") dated September 13, 2001, states that McDuffy was audibly called three times and the clerk was ordered to issue a re-arrest warrant. A January 24, 2002 CCS entry states that McDuffy was in custody, and a January 31, 2002 entry states that the court appointed public defender Jason Reyome. A February 14, 2002 entry states that the court held a probation violation hearing at which McDuffy appeared in person and by counsel Attorney Reyome and that the violation was taken under advisement pending disposition of the new charge and written notification by the probation

---

[2] The chronological case summary also indicates that the trial court "may consider AMS if defendant completes probation." Appellant's Appendix Volume 2 at 5; Respondent's Exhibit A at 4.

[3] The notice also stated, under additional information, that on May 11, 2001, McDuffy had signed a pay agreement that indicated he would pay fifty-five dollars per month to the probation department.

department. On February 21, 2002, the probation department filed an amended notice of probation violation alleging that McDuffy had been arrested and charged with the new offense of battery, had failed to make a good faith effort toward payment of his financial obligation, had failed to complete the thirty hours of community service work, and had failed to continue the GED classes at the MLK Multi-Service Center.[4] CCS entries on April 9, 2002, indicate that the new charges were disposed and that the court scheduled a hearing for April 11, 2002, to address the other allegations.

[4] On April 11, 2002, the court held a probation hearing at which McDuffy appeared in person and by counsel Attorney Reyome, the State appeared by deputy prosecutor Attorney Wyser, and Wiggins was present for the probation department. The parties reached an agreement "for 30 actual additional days,"

---

[4] The amended notice also stated, under "Additional Information," the following:

> The client reported for a scheduled probation office appointment on 8/14/01 and was rescheduled to return on 9/11/01 at 4:30pm. The office was closed early due to the terrorist attacks. The client did not contact the probation office again until 11/16/01. He called this officer wanting to turn himself in and stated "I would have turned myself in earlier, but due to all of the terrorism going on I was afraid to be down there." The client failed to turn himself in on 11/17/01 and this officer had no further contact with him until he called again on 1/2/02 complaining that his face was now "being shown on TV and on the wall at the liquor store." The client was ordered to complete 30 hours of Community Service Work. He has failed to provide any verification of completing the hours . . . . The client was Court ordered to complete the GED program at the MLK Multi-Service Center. On 8/14/01, the client informed Officer Huber that he wanted to postpone the GED and return to high school. The client failed to provide verification of attending GED classes at the MLK Center or returning to high school. On 6/12/01, the client signed a payment plan agreeing to make monthly payments in the amount of $55 until his Court debt was paid in full. At this time, the client has made one payment in the amount of $30. The remaining balance is $575.00.

Appellant's Appendix Volume 2 at 16-17.

and the court entered an order that McDuffy serve sixty days. Petitioner's Exhibit 4 at 3.

[5] On August 8, 2013, McDuffy filed a petition for post-conviction relief alleging his public defender acted as both defense attorney and prosecutor and he received ineffective assistance during his probation violation hearing. On September 15, 2015, McDuffy filed a motion to compel the prosecutor to produce transcripts of the probation violation hearing and all documents held by the juvenile court and probation office, and the court denied the motion as not relevant and probative of the issues raised. McDuffy filed several requests that Attorney Wyser be subpoenaed for the evidentiary hearing, and the post-conviction court denied the requests and found that McDuffy asked the court to subpoena Attorney Wyser at an address in the State of Nevada, and that Attorney Wyser's appearance at the evidentiary hearing was not necessary as the record of proceedings, including the CCS, would be admissible evidence. On March 3, 2016, McDuffy filed an amended petition for post-conviction relief alleging ineffective assistance of counsel in his juvenile waiver proceeding and his probation violation hearing, prosecutorial misconduct at his probation violation hearing, and abuse of discretion at his probation violation hearing. That same day, McDuffy also filed a request that the case be transferred to the elected judge, which the court denied as untimely.

[6] On July 14, 2016, the court held an evidentiary hearing on McDuffy's petition at which Attorney Reyome and McDuffy testified. The post-conviction court entered findings of fact and conclusions of law denying McDuffy's petition as to

each of his claims. In finding that McDuffy is not entitled to relief on his claim of ineffective assistance of counsel at the probation hearing, the court found in part that McDuffy admitted that he had violated conditions of his probation and also agreed to a recommended sentence which the court imposed, that the record indicates the trial court followed proper procedure in revoking his probation and did not violate his procedural due process rights, and that the trial court properly revoked McDuffy's probation.

## *Discussion*

[7] Before discussing McDuffy's allegations of error, we note the general standard under which we review a post-conviction court's denial of a petition for post-conviction relief. The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004); Ind. Post-Conviction Rule 1(5). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. 810 N.E.2d at 679. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* Further, the post-conviction court in this case entered findings of fact and conclusions thereon in accordance with Indiana Post-Conviction Rule 1(6). *Id.* "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Id.* In this review, we accept findings of fact unless clearly erroneous, but we

accord no deference to conclusions of law. *Id.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.*

[8] We further observe that pro se litigants are held to the same standard as trained counsel and are required to follow procedural rules. *Evans v. State*, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004), *trans. denied*. Also, to the extent McDuffy raises arguments on appeal which he did not allege in his petition for post-conviction relief, those arguments are waived. *See Allen v. State*, 749 N.E.2d 1158, 1171 (Ind. 2001) ("Issues not raised in the petition for post-conviction relief may not be raised for the first time on post-conviction appeal."), *reh'g denied*, *cert. denied*, 535 U.S. 1060, 122 S. Ct. 1925 (2002).

## I.

[9] The first issue is whether the post-conviction court abused its discretion in denying McDuffy's requests to obtain certain records, subpoena Attorney Wyser, and transfer the case to the elected judge. The management of discovery is within the sound discretion of the post-conviction court, and we will not reverse a court's decision on discovery absent an abuse of discretion. *See Roche v. State*, 690 N.E.2d 1115, 1133 (Ind. 1997).

### A. *Request for Documents*

[10] McDuffy claims the post-conviction court abused its discretion in denying his motion to compel the prosecutor to produce documents and argues he could not establish that he was scheduled for a probation hearing on the day of the

September 11, 2011 terrorist attacks which was cancelled and never rescheduled and that the amended notice of probation violation was never given to him. The State argues that McDuffy fails to show he sought anything more than the opportunity to generally rifle through files in hopes of discovering a claim.

[11] The appellant's appendix contains only the first page of McDuffy's motion to compel, and that page does not specify the documents or information sought from the prosecutor or probation office.[5] The court's note indicates that it denied the request for documents as not relevant or probative of the issues raised. The copy of the February 21, 2002 amended notice of probation included in the appellant's appendix is file-stamped and does not contain return of service information indicating it was served upon McDuffy and states under additional information that the probation office was closed early on September 11, 2001, and McDuffy did not contact the probation office again until November 16, 2001. While the amended notice does not contain return of service information, we observe that McDuffy does not argue that he did not receive the August 27, 2001 notice of probation violation or that the information in the amended notice that he contacted probation in November 2001 but failed to turn himself in and failed to provide verification of attending GED classes or returning to high school was incorrect. We also observe that

---

[5] The first page states in part that McDuffy moves for an order "requiring counsel to produce attorney-client file" and that McDuffy "will require access to the revocation hearing transcripts and any available audio in raising all grounds known and available to him." Appellant's Appendix Volume 2 at 31. The transcript of the probation revocation hearing was admitted as Petitioner's exhibit 4 at the evidentiary hearing.

McDuffy was present with defense counsel at the February 14, 2002 probation hearing at which the court took the matter under advisement pending disposition of the new charges; that April 9, 2002 CCS entries state that the new charges had been disposed and that the court scheduled the April 11, 2002 hearing to address the other allegations; and that the April 11, 2002 probation hearing transcript establishes that McDuffy was present and represented by counsel and that the probation department referenced an agreement of the parties related to "allegations . . . two through five" and that, after McDuffy stated that he had enrolled in school and admitted to the other allegations, the court found that he had violated allegations "two, three, and four." Petitioner's Exhibit 4 at 2, 5.

[12] Based upon the record, McDuffy has not shown that additional probation documents would establish that he was not given the amended allegations or notice of a hearing, and we cannot say that the post-conviction court abused its discretion in denying his motion to compel with respect to his request for documents.

B. *Request for Subpoena of Witness*

[13] If a pro se petitioner requests issuance of subpoenas for witnesses at an evidentiary hearing, "the petitioner shall specifically state by affidavit the reason the witness' testimony is required and the substance of the witness' expected testimony." Ind. Post-Conviction Rule 1(9). If the court finds the witness' testimony would be relevant and probative, the court shall order that

the subpoena be issued. *Id.* The post-conviction court has the discretion to determine whether to grant or deny a petitioner's request for a subpoena. *Pannell v. State*, 36 N.E.3d 477, 486 (Ind. Ct. App. 2015), *trans. denied*. We will find that a court has abused this discretion if its decision is against the logic and effect of the facts and circumstances before it. *Id.*

[14] In requesting the issuance of a subpoena, McDuffy asserted that Attorney Wyser's testimony was required for the reason that he acted as both public defender and prosecutor. However, McDuffy did not specifically state the substance of Attorney Wyser's expected testimony. Further, the post-conviction court noted that it was asked to issue a subpoena to Attorney Wyser at an address in the State of Nevada and that the attorney's appearance at the evidentiary hearing was not necessary as the record of the proceedings, including the CCS, would be admissible evidence as to the issue.[6]

[15] The record of the proceedings reveals that the trial court held a pre-trial conference on February 6, 2001, at which McDuffy appeared "in person and by counsel Wyser for Thomas," that the State offered McDuffy an agreement pursuant to which he would plead guilty to burglary as a class B felony, the State would dismiss the theft count, and there would be a ten-year cap on the executed portion of McDuffy's sentence, and that McDuffy, represented by Attorney Wyser, rejected the State's offer. Appellant's Appendix at 4;

---

[6] The CCS was subsequently admitted at the evidentiary hearing.

Respondent's Exhibit A at 3. The record further reveals that Attorney Thomas appeared on behalf of McDuffy for all of the subsequent hearings through the guilty plea and sentencing hearings and that McDuffy, represented by Attorney Thomas, ultimately pled guilty to theft as a class D felony and was sentenced to time served plus a suspended sentence and placed on probation for one year. The post-conviction court specifically found that, "[h]aving reviewed the evidence, the Court finds that Wyser's involvement in the case was limited to his appearance on February 6, 2001, as a substitute for Thomas." Appellant's Brief at 40. We also observe that that the transcript of the April 11, 2002 probation hearing reveals, as set forth more completely below, that Attorney Wyser spoke three times regarding McDuffy's suspended sentence and the State's offer. Petitioner's Exhibit 4 at 2.

[16] Based upon the record and under these circumstances, including that McDuffy did not specifically state Attorney Wyser's expected testimony, that the address provided for Wyser was in the State of Nevada, and that the CCS and transcript of the April 11, 2002 hearing reveal the extent of Attorney Wyser's representation, we cannot say that the post-conviction court abused its discretion in denying McDuffy's request to subpoena Attorney Wyser to be present at the evidentiary hearing.

C. *Request for Transfer*

[17] McDuffy argues that he timely filed his request to transfer the case to the elected judge and cites Ind. Code § 33-5.1-2-27. The State responds that the

applicable statute, Ind. Code § 33-33-49-32, contains a time limit and that McDuffy waited two and one-half years after filing his petition and until after the magistrate had presided over two hearings and ruled on numerous motions before he finally requested transfer of the case to the elected judge.

[18] At the time McDuffy filed his petition for post-conviction relief in August 2013, Ind. Code § 33-33-49-32(c) provided:

> A party to a superior court proceeding that has been assigned to a magistrate appointed under this section may request that an elected judge of the superior court preside over the proceeding instead of the magistrate to whom the proceeding has been assigned. A request under this subsection must be in writing and must be filed with the court:
>
>> (1) in a civil case, not later than:
>>
>>> (A) ten (10) days after the pleadings are closed; or
>>>
>>> (B) thirty (30) days after the case is entered on the chronological case summary, in a case in which the defendant is not required to answer; or
>>
>> (2) in a criminal case, not later than ten (10) days after the omnibus date.
>
> Upon a timely request made under this subsection by either party, the magistrate to whom the proceeding has been assigned shall transfer the proceeding back to the superior court judge.

(Subsequently amended by Pub. L. No. 173-2015, § 9 (eff. Jul. 1, 2015); Pub. L. No. 129-2017, § 2 (eff. July 1, 2017)).[7]

[19] The record reveals that McDuffy filed his petition for post-conviction relief on August 8, 2013. He filed his request that the case be transferred to the elected judge, along with his amended petition, on March 3, 2016. McDuffy filed his transfer request two and one-half years after he first filed his petition for post-conviction relief. We cannot say the court abused its discretion or erred in denying McDuffy's transfer request.

## II.

[20] The next issue is whether McDuffy was denied effective assistance of counsel at his probation hearing. A claim of ineffective assistance of counsel requires a showing that counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), *reh'g denied*). A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms.

---

[7] Ind. Code § 33-5.1-2-27, to which McDuffy cites, was repealed in 2003, and prior to its repeal provided:

> A party to a superior court proceeding that has been assigned to a magistrate appointed under this section may request that an elected judge of the superior court preside over the proceeding instead of the magistrate to whom the proceeding has been assigned. Upon a request made under this subsection by either party, the magistrate to whom the proceeding has been assigned shall transfer the proceeding back to the superior court judge.

(Repealed by Pub. L. No. 98-2004, § 164 (eff. Jul. 1, 2004)).

*Id.* "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *French*, 778 N.E.2d at 824. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Perez v. State*, 748 N.E.2d 853, 854 (Ind. 2001). Failure to satisfy either prong will cause the claim to fail. *French*, 778 N.E.2d at 824. Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. *Id.*

[21] When considering a claim of ineffective assistance of counsel, a "strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Morgan v. State*, 755 N.E.2d 1070, 1072 (Ind. 2001). "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Williams v. State*, 771 N.E.2d 70, 73 (Ind. 2002). Evidence of isolated poor strategy, inexperience, or bad tactics do not necessarily amount to ineffective assistance of counsel. *Clark v. State*, 668 N.E.2d 1206, 1211 (Ind. 1996), *reh'g denied*, *cert. denied*, 520 U.S. 1171, 117 S. Ct. 1438 (1997). "Reasonable strategy is not subject to judicial second guesses." *Burr v. State*, 492 N.E.2d 306, 309 (Ind. 1986). We "will not lightly

speculate as to what may or may not have been an advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best." *Whitener v. State*, 696 N.E.2d 40, 42 (Ind. 1998).

[22] "Because a probation revocation hearing is a civil proceeding, we apply a less stringent standard of review in assessing counsel's performance." *Jordan v. State*, 60 N.E.3d 1062, 1068 (Ind. Ct. App. 2016) (citation and brackets omitted). "If counsel appeared and represented the petitioner in a procedurally fair setting which resulted in judgment of the court, it is not necessary to judge his performance by rigorous standards." *Id.*

[23] McDuffy argues that Attorney Reyome should have advised him that he could not be held and sentenced for failure to pay fines and costs and cites Ind. Code § 35-38-2-3. The State argues that Attorney Reyome appeared on behalf of McDuffy and represented him in a procedurally fair revocation hearing and that McDuffy's probation was revoked for three separate violations, only one of which related to payment of fees.

[24] At the time of McDuffy's probation hearing, Ind. Code § 35-38-2-3 provided in part that "[p]robation may not be revoked for failure to comply with conditions of sentencing that imposes financial obligations on the person unless the person recklessly, knowingly, or intentionally fails to pay" and that "[f]ailure to pay

fines or costs required as a condition of probation may not be the sole basis for commitment to the department of correction."[8]

[25] The record reveals that the February 21, 2002 amended notice of probation violation alleged:

> (PENDING)     1.  On or about 8/19/01, the client was arrested and charged with Battery (MA) under Cause #49G02-10108-CM-170514.  He was OR'd on 8/23/01.  A Court Trial is set for 3/26/02 at 1:00pm in Court #21.
>
> (PENDING)     2.  The client has failed to make a good faith effort toward payment of his financial obligation.
>
> (NEW)      3.  The client failed to report for to [sic] the probation department as directed.
>
> (NEW)      4.  The client failed to complete the 30 hours of Community Service Work.
>
> (NEW)      5.  The client failed to continue the GED classes at the MLK Multi-Service Center.

Appellant's Appendix Volume 2 at 16.

[26] The record further reveals that the following exchange occurred at McDuffy's probation revocation hearing:

---

[8] Subsequently amended by Pub. L. No. 98-2004, § 152 (eff. Jul. 1, 2004); Pub. L. No. 13-2005, § 1 (eff. Jul. 1, 2005); Pub. L. No. 156-2007, § 5 (eff. Jul. 1, 2007); Pub. L. No. 48-2008, § 1 (eff. Jul. 1, 2008); Pub. L. No. 106-2010, § 11 (eff. Jul. 1, 2010); Pub. L. No. 147-2012, § 10 (eff. Jul. 1, 2012); Pub. L. No. 74-2015, § 21 (eff. Jul. 1, 2015).

THE COURT: This is State versus James McDuffy, who is present in person, by counsel Mr. Reyome; the State by Mr. Wyser and Ms. Wiggins, and we're here on the notice of probation violation that was filed on February 21. New case was dismissed; is that right?

MS. WIGGINS: Yes, Judge.

THE COURT: Okay. So, we're withdrawing one.

MS. WIGGINS: Yes.

* * * * *

MR. WYSER: We have an agreement on the others.

THE COURT: Go ahead. What is it?

MS. WIGGINS: The agreement is 90 days for allegations two through, two through five, Judge.

THE COURT: With credit?

MS. WIGGINS: Actually, Judge, I'm going to have to say no, because I believe that was a love gift.

THE COURT: Kind of like what we just had in the court room.

MR. REYOME: For what it's worth, Your Honor, that wasn't what was negotiated, so I need a second to confirm with my client.

MS. WIGGINS: That is true, Judge. That is true.

THE COURT: What's his credit time? He'd be out.

MR. WYSER: Judge, he was looking 463 total, so the offer of 90 is pretty lenient. That would be do 90, not with credit.

THE COURT: So 45 more?

MR. WYSER:     Correct.  It's either that or we can argue the 463.

THE COURT:     Right.  Do you understand what the prosecutor just said?  He said you can either take that or we can argue about whether I give you 463 days.  And I'm not saying I will or I won't, but that's what the argument would become.

THE DEFENDANT:     Can I consult with my counsel?

THE COURT:     You sure can.  He's got 79 days credit as you consult.

MR. REYOME:     We did a little haggling, Your Honor, and I think we've reached an agreement that for 30 actual additional days.

THE COURT:     Okay.  All right.  Raise your hand, sir.

WHEREUPON, THE DEFENDANT IS SWORN BY THE COURT.

THE COURT:     Do you admit that you failed to make a good faith effort towards paying your court ordered debt?

THE DEFENDANT:     Hm?

THE COURT:     Do you admit you failed to pay the money you owed?

THE DEFENDANT:     I tried.

THE COURT:     Well, you paid thirty dollars in about seven months.  You didn't try real hard, did you?

THE DEFENDANT:     I didn't try to my full ability, then.

THE COURT:     All right, then.  Do you admit that you failed to report when you were told to?

THE DEFENDANT:     Yes, ma'am.

THE COURT: Do you admit that you failed to complete all of the community service work I ordered?

THE DEFENDANT: Yes, ma'am.

THE COURT: And do you admit that you failed to continue your GED at the MLK Multiservice Center?

THE DEFENDANT: No, ma'am. I was enrolled in school. I was enrolled at Manual High School.

THE COURT: Oh. He said he was enrolled at Manual.

MS. WIGGINS: Of course I don't have record of that, Judge.

THE DEFENDANT: My, my probation officer was -

MR. REYOME: For what it's worth, Your Honor, we can admit that he didn't complete his community service. I mean, that's not a big issue.

THE COURT: We'll show a violation on two, three, and four, not on five. No violation on five. We'll order the defendant to serve 60 days zero credit. He gets credit time. But not jail time credit. I want to just give him a 60 day commitment on count one. It needs to be to the DOC. It's not count one. It's count two.

Petitioner's Exhibit 4 at 2-5.

[27]  Attorney Reyome reached an agreement on behalf of McDuffy pursuant to which McDuffy would serve significantly less than his full previously-suspended sentence, and McDuffy admitted to three of the five allegations against him. Based upon our standard and under the circumstances, we cannot say that the performance of McDuffy's counsel at the probation hearing was

deficient or that we are left with a definite and firm conviction that a mistake has been made or that reversal is warranted on this basis.

## III.

[28] The next issue is whether McDuffy has shown the post-conviction court was biased against him. We presume that the judge was unbiased and unprejudiced. *Perry v. State*, 904 N.E.2d 302, 307 (Ind. Ct. App. 2009), *trans. denied*. To rebut that presumption, the defendant must establish from the judge's conduct actual bias or prejudice that places the defendant in jeopardy. *Id.* Adverse rulings alone are insufficient to establish bias per se, and bias will rarely, if ever, be found on the face of rulings alone because the defendant must show an improper or extra-judicial factor or such a high degree of favoritism that a fair judgment was impossible. *Id.* at 308.

[29] McDuffy argues that the post-conviction judge assumed an adversarial role denying him a fair proceeding. The State argues that the fact the post-conviction court did not find McDuffy's testimony credible is not evidence of bias. It argues that the court responded in a measured and professional manner to a recalcitrant witness who would not provide direct answers to simple factual questions.

[30] The record reveals that, at the evidentiary hearing, the post-conviction court heard testimony from Attorney Reyome and McDuffy. After McDuffy presented his own testimony, the court directed McDuffy to the page and line of the transcript of the probation revocation hearing showing that he had been

placed under oath and then read portions of the transcript to McDuffy. The court read the portion of the transcript regarding McDuffy's failure to pay and his statement "I didn't try to my full ability then," and McDuffy replied "I said I tried." Transcript at 28. The court read the part of the transcript showing the revocation court had asked if McDuffy failed to report when told and that he had answered affirmatively, and McDuffy stated "But I tried." *Id.* The court also read the portion of the transcript showing the revocation court had asked if McDuffy admitted to failing to complete his community service work and that he had replied affirmatively, and McDuffy stated "Yes. I did say yes. Because I was incarcerated." *Id.* at 29. The court asked McDuffy if he had admitted to the violation, and McDuffy replied "I believe that those admissions were not done intelligently" "[d]ue to the lack of counsel." *Id.* The following exchange then occurred between the court and McDuffy:

> THE COURT:     Okay. You also agree with me in looking at Exhibit 4 [the probation hearing transcript], that at no time did you object to Mr. Wyser appearing for the State of Indiana at that violation hearing, did you?
>
> MR. MCDUFFY:  I believe that's something that my lawyer should have done.
>
> THE COURT:     But you didn't say anything to him?
>
> MR. MCDUFFY:  He knew. Why didn't --
>
> THE COURT:     You didn't say anything to him, did you?
>
> MR. MCDUFFY:  So you --
>
> THE COURT:     Answer my question.

MR. MCDUFFY:  So you object.  I object.

THE COURT:     Did you say anything to your attorney?

MR. MCDUFFY:  Because you are arguing with me and trying to make the question, the line of question (indiscernible).

THE COURT:     Are you refusing to answer my question?

MR. MCDUFFY:  You're making your question argumentative. You acting in the capacity of the prosecutor.

THE COURT:     I'm asking you a question.  Did you tell your lawyer about the problem with David Wyser?

MR. MCDUFFY:  I absolutely told my lawyer that David Wyser was my public defender.

THE COURT:     Okay.

MR. MCDUFFY:  I absolutely did.

THE COURT:     Did you ask him that while Mr. Reyome was on the stand here earlier?

MR. MCDUFFY:  No.  I didn't.  But I absolutely told him that -- And I've been sworn under oath that that's the truth.

THE COURT:     I'll be honest, I don't find your testimony credible today.

MR. MCDUFFY:  Okay.  I'm sorry.

THE COURT:     I don't find it credible at all.

MR. MCDUFFY:  I'm sorry that you don't find my testimony credible but I don't think you ever would have found my testimony credible.  Prior to this I asked to get you off of this case and have it referred back to the Superior Court Judge and that motion was denied.  So I feel like me and you have a bias stance

on this case. And the motion was denied on an erroneous pretense.

*Id.* at 29-31.

[31] Based upon the record, we cannot say that the post-conviction court's questioning of McDuffy and its finding that his testimony was not credible demonstrates that the judge showed partiality or establishes a degree of favoritism such that a fair judgment was impossible, and accordingly we conclude that McDuffy has not rebutted the presumption that the post-conviction court was unbiased. *See Perry*, 904 N.E.2d at 307-308 (finding that the petitioner offered no evidence that the post-conviction court derived its decisions from an improper source or was motivated by the type of hostility necessary to establish judicial bias).

### Conclusion

[32] For the foregoing reasons, we affirm the post-conviction court's denial of McDuffy's petition for post-conviction relief.

[33] Affirmed.

Najam, J., and Kirsch, J., concur.